THE PORT CARBON. THE BRONX. NEW YORK & NEW JERSEY TRANSP. CO. v. RED STAR TOWING & TRANSPORTATION CO. et al.

(District Court, E. D. New York. June 4, 1923.)

Collision ⊜71 (2)—Tug held in fault for collision of tow with moored barge.

A tug with two light barges in tow tandem *held* solely in fault for injury of the rear barge by collision with a barge tied up at the side of Bronx River for unloading, for failure of the master to allow sufficient room in passing.

In Admiralty. Suit for collision by the New York & New Jersey Transportation Company, owner of the barge Port Carbon, against the steam tug Bronx, the Red Star Towing & Transportation Company, claimant, with the City of New York and Rodgers & Hagerty impleaded. Decree for libelant against the Bronx.

Macklin, Brown & Van Wyck, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for respondent Red Star Towing & Transportation Co.

Foley & Martin, of New York City, for respondent Rodgers & Hagerty, Inc.

John P. O'Brien, Corp. Counsel, of New York City, for respondent city of New York.

CAMPBELL, District Judge. This is a suit in admiralty to recover damages suffered by the barge Port Carbon as the result of a collision. The libel was filed against the steam tug Bronx, and on the petition of Red Star Towing & Transportation Company, owner of the steam tug Bronx, under the fifty-sixth rule in admiralty (267 Fed. xxi), the city of New York was impleaded, and on the petition of the city of New York, the owner of the scow D. S. C. No. 1, under the

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fifty-sixth rule in admiralty, Rodgers & Hagerty, Inc., was impleaded.

On March 4, 1920, the respondent Rodgers & Hagerty, Inc., maintained a dump along the southerly side of the Bronx River at Randall avenue, where they unloaded from scows ashes and refuse other than garbage collected by the street cleaning department of the city of New York, under a contract made by said Rodgers & Hagerty, Inc., with the said city of New York. For the purpose of unloading said scows the respondent Rodgers & Hagerty, Inc., used two diggers, the first or larger removing most of the load, and the second or smaller being used for the purpose of cleaning up. To the northwest of the larger digger was a cove in which boats were placed broadside to the shore before unloading, the water inshore in the cove being shallow near the dock. The first boat lay off about 20 feet, and, if the boats were of about 30 feet beam, a boat placed abreast and outside of the first boat would extend one-half the width of her beam into the river beyond the boat ahead of her at the bulkhead or dock, which extended along the southwesterly side of the river in front of said digger.

On the day in question at about 11 o'clock a. m. there were along the said bulkhead and broadside thereto, each astern of the other, commencing at the northwesterly end of said bulkhead, five boats, the last being the Fire Light, which was waiting to go under the large digger. Astern in the cove, and extending out into the river half a boat's width beyond the Fire Light, were D. S. C. No. 1, and inside of her one of O'Brien's boats, both of which were loaded and waiting to follow the Fire Light under the digger. On the day in question the steam tug Bronx left Burns Bros.' dock at Garrison avenue, on the Bronx River, with two light barges in a tandem tow. The Bronx had the barges on a hawser, the Port Carbon tailing onto the hawser barge Red Star 26. The boats were on a short line, the distance between the Red Star 26 and Port Carbon not being over 15 feet, the Port Carbon being on two lines.

The channel has since been dredged and is now straight, but at that time there was a bend in the stream just before you reached Rodgers & Hagerty's dock. The weather was clear, tide ebb, wind east-northeast, not very heavy. The channel from where the scows were lying at Rodgers & Hagerty's dock to the other side was about 150 feet.

The steam tug Bronx could make about 4½ miles an hour, and was making about 3½ miles an hour, the tide running about half a mile an hour. The Bronx drew about 7½ feet; the Red Star 26 and Port Carbon about 3 feet. When the Bronx passed the bend into the reach in front of Rodgers & Hagerty's dock, her master gave her full speed, so as to straighten out his tow, because the barges, being light, would feel the wind, the effect of which would be to set them down on the barges alongside Rodgers & Hagerty's dock. He says he straightened out his tow and expected to pass clear by 8 feet, but that the suction of the Bronx as she passed caused the barges to fan out 10 or 12 feet, and the D. S. C. No. 1 struck the Port Carbon on her stern quarter starboard side, causing the injuries of which complaint is made.

In my opinion the master errs in the distance the boats fanned out, because I find that the D. S. C. No. 1 was properly made fast to the O'Brien boat, and there is no evidence to show that the O'Brien boat

was not properly made fast. The master of the Bronx and the deck-hand claim that there were three boats abreast extending out from Rodgers & Hagerty's dock at the time of the collision, and that they obstructed the channel; but I think they were in error, because the written records are more convincing than recollection, and I believe the boats at Rodgers & Hagerty's dock were in the positions I have hereinbefore described, and that there was ample room to pass, but the master of the Bronx miscalculated and allowed the Port Carbon to drop down too far.

The D. S. C. No. 1 would, of course, feel the force of the suction of the Bronx at the distance of 8 feet and come out some distance, and she would not be subject to blame, but the master of the Bronx should have made allowance therefor. If the master and deckhand of the Bronx were correct, and the barges extended three abreast into a 150-foot channel, they would have occupied substantially 120 feet, and left but about 30 feet for navigation, and under these conditions no master using ordinary care would have attempted to take through his tow without removing the outside barge, which was not done.

If the barges were three abreast, one-half of one boat being inside the cove, and 2½ outside, not more than 80 feet of the channel would have been occupied, and at least 70 feet in width would have been left for navigation; but, as I have hereinbefore said, I am of the opinion that the master and deckhand of the Bronx were in error. The master of the Bronx was in the habit of going through the Bronx River and knew the custom of unloading boats at Rodgers & Hagerty's dock. The unloading was carried on expeditiously and did not unduly obstruct the channel. The day was clear and boats could be plainly seen by the Bronx, and her master said he saw the boats going up earlier in the morning.

I find the Port Carbon is without blame, as she was without power and in control of the Bronx; the D. S. C. No. 1 is without blame, as her lines were properly made fast and remained properly made fast after the collision, and therefore no blame attaches to the city of New York; and Rodgers & Hagerty are without blame, because they did not so obstruct the navigation of the Bronx River in the daytime when this collision occurred, with no boats other than the Bronx and her tow moving at this point, as to unreasonably interfere with navigation; but the whole blame for this collision rests on the Bronx, because her master, believing he was allowing her room enough to pass with the tow, miscalculated the effect of the wind on the Port Carbon, and the effect of the suction of the Bronx on D. S. C. No. 1, and tried to pass too close to the D. S. C. No. 1, when there was enough clear water for him to have safely passed.

The libel and petitions against the city of New York and Rodgers & Hagerty, Inc., are dismissed. A decree will enter in favor of the libelant against the steam tug Bronx, with costs, and the usual order of reference will be granted.